1  CECILY A. WATERMAN, State Bar No. 063502
   SHANNON NAKABAYASHI, State Bar No. 215469
2  MORGAN, LEWIS & BOCKIUS LLP
   One Market, Spear Street Tower
3  San Francisco, CA 94105-1126
   Tel: 415.442.1000
4  Fax: 415.442.1001
   E-mail: cwaterman@morganlewis.com
5          snakabayashi@morganlewis.com

6  Attorneys for Defendants
   FEDERAL HOME LOAN BANK OF SAN FRANCISCO,
7  ANITA ADAMS AND EMMANUEL UNGSON

8
                 UNITED STATES DISTRICT COURT
9
                NORTHERN DISTRICT OF CALIFORNIA
10

11
   FREDDIE LAMBRIGHT, JR.,                Case No. C 07 4340 CW
12
                    Plaintiff,            **DEFENDANTS' MOTION TO DISMISS**
13                                        **PLAINTIFF'S STATE LAW CLAIMS;**
                                          **MOTION TO DISMISS INDIVIDUAL**
       vs.                                **DEFENDANTS; PETITION TO COMPEL**
14                                        **ARBITRATION OF REMAINING**
   FEDERAL HOME LOAN BANK OF              **CLAIMS; MEMORANDUM OF POINTS**
15 SAN FRANCISCO, ANITA ADAMS,            **AND AUTHORITIES IN SUPPORT**
   EMMANUEL UNGSON and DOES 1-50,         **THEROF**
16
                    Defendants.           Date:  November 15, 2007
17                                        Time:  2:00 p.m.
                                          Dept.: 2
18                                        Judge: Hon. Claudia Wilken
19
                                          Date Filed:  August 22, 2007
20

21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

MORGAN, LEWIS &
 BOCKIUS LLP
ATTORNEYS AT LAW
 SAN FRANCISCO

1-SF/7603436.4

1   TO PLAINTIFF FREDDIE LAMBRIGHT, JR. AND TO HIS COUNSEL OF RECORD:

2          PLEASE TAKE NOTICE that on November 15, 2007, at 2:00 p.m. or as soon thereafter

3   as the matter may be heard in Courtroom 2 of the above-entitled Court, located at 1301 Clay

4   Street, Oakland, California, Defendants the Federal Home Loan Bank of San Francisco ("FHLB-

5   SF" or "the Bank"), Anita Adams ("Adams") and Emmanuel Ungson ("Ungson") (collectively

6   "Defendants") will and hereby do:  1)  move the Court to dismiss Plaintiff's state law claims (the

7   Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Causes of Action set forth in

8   Plaintiff's Complaint), pursuant to Federal Rule of Civil Procedure 12(b)(6), on the basis that

9   such claims are preempted by the Federal Home Loan Bank Act; 2) move the Court to dismiss all

10  claims against the individual defendants pursuant to Federal Rule of Civil Procedure 12(b)(6), on

11  the basis that Plaintiff's state law claims against them are preempted and individuals cannot be

12  held liable under Title VII as a matter of law; 3)  petition this court to compel arbitration of all of

13  Plaintiff's claims which survive the motion to dismiss.  This motion is based on this Notice of

14  Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Gregory P.

15  Fontenot ("Fontenot Decl."), the Declaration of Cecily A. Waterman ("Waterman Decl.")[1] and the

16  [Proposed] Order submitted herewith, on such matters as Defendants may present on reply and at

17  the hearing, and the complete files and records in this action.

18

19  Dated: October  10 , 2007                MORGAN, LEWIS & BOCKIUS LLP
                                             CECILY A. WATERMAN
20                                           SHANNON B. NAKABAYASHI

21

22                                           By _Shannon B Nakabayashi_
                                                Cecily A. Waterman
23                                              Shannon B. Nakabayashi
                                                Attorneys for Defendants
24                                              FEDERAL HOME LOAN BANK OF
                                                SAN FRANCISCO, ANITA ADAMS
25                                              AND EMMANUEL UNGSON

26

27  [1] The Fontenot and Waterman Declarations are submitted in support of Defendants' Petition to
    Compel Arbitration, not in support of Defendants' Motion to Dismiss.  The Motion to Dismiss is
28  based solely on the allegations in Plaintiff's Complaint.

1

## TABLE OF CONTENTS

2

Page

3 I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................1

4 II. STATEMENT OF FACTS .......................................................................................1

5      A. Plaintiff's Employment with the Bank.................................................................1

6      B. Plaintiff's Binding Arbitration Agreement...........................................................2

7 III. PROCEDURAL HISTORY ....................................................................................4

8 IV. ARGUMENT .........................................................................................................5

9      A. Plaintiff's State Law Claims Against the Bank, Adams and Ungson Are
10         Barred As a Matter of Law and Should Be Dismissed Because They Are
Preempted By the Federal Home Loan Bank Act.................................................5

11         1. The Federal Home Loan Bank Act Preempts State Law...........................5

12         2. The FHLB Act Governs the Federal Home Loan Banks'
Relationship with Their Employees .........................................................6

13            a. Plaintiff's Common Law Intentional Infliction of Emotional
Distress Claim is Preempted.........................................................7

14

15            b. Plaintiff's California Fair Employment and Housing Act
Claims are Preempted ..................................................................8

16         3. The FHLB Act Preempts Not Only Claims Against the Bank, but
Claims Against Bank Employees..............................................................10

17      B. Plaintiff's Claims Should be Arbitrated ..............................................................11

18         1. FHLB-SF's Arbitration Agreement is Enforceable under Both
19         Federal and State Law, and Encompasses Plaintiff's Claims Against
All Defendants.........................................................................................11

20            a. The Arbitration Agreement Contained in the Bank's Dispute
Resolution Procedure is Enforceable Under the FAA .................11

21

22         2. The Arbitration Agreement Contained in the Bank's Dispute
Resolution Procedure is Enforceable Under California Law...................12

23            (1) The Arbitration Agreement Provides for a Neutral
Arbitrator ........................................................................13

24

25            (2) The Arbitration Agreement Does Not Limit
Statutory Remedies...........................................................13

26            (3) The Bank's Dispute Resolution Procedures Permit
More Than Adequate Discovery .......................................14

27            (4) The Arbitration Agreement Requires a Written
Arbitration Award ............................................................14

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i                    DEFENDANTS' MOTION TO DISMISS;
PETITION TO COMPEL ARBITRATION (C
07 4340 CW)

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3    (5)    The Arbitration Agreement Does Not Require
            Plaintiff to Pay the Costs of Arbitration ...........................14

4
      (6)    The Arbitration Agreement Does Not Lack
5            Mutuality and Is Not Unconscionable ..............................15

6      (7)    If Any Portion of the Agreement Were Found to
              Violate Armendariz It Should Be Severed .......................15

7
      3.    All of Plaintiff's Claims Are Subject to Arbitration .................17

8      a.    The Arbitration Agreement Covers All Claims in this
9            Action...................................................................................17

      b.    The Arbitration Agreement Encompasses Plaintiff's Claims
10           Against Adams and Ungson ........................................17

11
C.    A Stay of Judicial Proceeding Pending Arbitration of this Action is
12    Appropriate ...............................................................................18

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION TO DISMISS;
PETITION TO COMPEL ARBITRATION (C
07 4340 CW)

1

## TABLE OF AUTHORITIES

2

**Page**

3 **Cases**

4 *24 Hour Fitness v. Superior Court,*
    66 Cal. App. 4th 1199 (1998) ...............................................................................17
5
*Ana Leon T. v. Federal Reserve Bank of Chicago,*
6    823 F. 2d 928 (6th Cir. 1987), *cert. denied 484 U.S.* 945 (1987).........................8, 10

7 *Andrews v. Federal Home Loan Bank of Atlanta,*
    998 F.2d 214 (4th Cir. 1993) ..............................................................................7, 8
8
*Armendariz v. Foundation Health Psychcare Services, Inc.,*
9    24 Cal.4th 83 (2000)......................................................................................passim

10 *Britton v. Co-op Banking Group,*
    4 F.3d 742 (9th Cir. 1993) ...................................................................................18
11
*Brookwood v. Bank of America,*
12    45 Cal. App. 4th 1667 (1996) ...............................................................................17

13 *Chan v. Drexel Burnham Lambert, Inc.,*
    178 Cal. App. 3d 632 (1986) ................................................................................13
14
*Chiron Corp. v. Ortho Diagnostic Systems, Inc.,*
15    207 F.3d 1126 (9th Cir. 2000) ..............................................................................17

16 *Circuit City Stores, Inc. v. Adams,*
    532 U.S. 105, 121 S.Ct. 1302 (2001) ................................................................1, 12
17
*Cooper v. Fed. Reserve Bank,*
18    467 U.S. 867, 104 S. Ct. 2794 ...............................................................................9

19 *Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985) .............................................................................................12
20
*EEOC v. Luce, Forward, Hamilton & Scripps,*
21    345 F.3d 742 (9th Cir. 2003) ................................................................................12

22 *English v. General Electric Co.,*
    496 U.S. 72, 110 S. Ct. 2270 (1990) .................................................................5, 10
23
*Fahey v. O'Melveny & Myers,*
24    200 F. 2d 420 (9th Cir. 1952), *cert. denied,* 315 U.S. 952 (1953)..........................5, 6

25 *Fittante v. Palm Springs Motors, Inc.,*
    105 Cal. App. 4th 708 (2003) ...............................................................................16
26
*Gilmer v. Interstate/Johnson Lane Corp.*
27    (1991) 500 U.S. 20, 111 S. Ct. 1647 ....................................................................12

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION TO DISMISS;
PETITION TO COMPEL ARBITRATION (C
07 4340 CW)

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Inglis v. Feinerman,*
    701 F. 2d 97 (9th Cir. 1983), *cert. denied,* 464 U.S. 1040 (1984)..........................7, 10

*Kispert v. Federal Home Loan Bank of Cincinnati,*
    778 F. Supp. 950 (S.D. Ohio 1991)..........................8, 9

*Kroske v. US Bank Corp.,*
    432 F.3d 976 (9th Cir. 2006) ..........................10

*Leyva v. Certified Grocers of California, Ltd.,*
    593 F.2d 857 (9th Cir. 1979) ..........................19

*Little v. Auto Stiegler, Inc.,*
    29 Cal. 4th 1064 (2003) ..........................13

*Martinez v. Scott Specialty Gases, Inc.,*
    83 Cal. App. 4th 1236 (2000) ..........................17

*Miller v. Maxwell's Int'l,*
    991 F.2d 583 (9th Cir. 1993) ..........................10

*Moncharsh v. Heily & Blase,*
    3 Cal. 4th 1 (1992) ..........................13

*Osei-Bonsu v. Federal Home Loan Bank of New York,*
    726 F.Supp. 95 (S.D.N.Y. 1989) ..........................8, 10

*Pacific Inv. Co. v. Townsend,*
    58 Cal. App. 3d 1 (1976) ..........................13, 17

*Peatros v. Bank of America, et al.,*
    22 Cal. 4th 147 (2000) ..........................9, 11

*Perry v. Thomas,*
    482 U.S. 483, 107 S.Ct. 2520 (1987) ..........................12

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
    388 US 395, 87 S.Ct. 1801 (1967) ..........................12

*Shoemaker v. Myers,*
    52 Cal.3d 1 (1990)..........................11

*Walleri v. Federal Home Loan Bank of Seattle,*
    83 F. 3d 1575 (1996) ..........................7, 8, 10

*Weiss v. Washington Mut. Bank,*
    147 Cal.App.4th 72 (2007) ..........................11

*Wiskotoni v. Mich. Nat'l Bank-West,*
    716 F.2d 378 (6th Cir. 1983) ..........................8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFENDANTS' MOTION TO DISMISS;
PETITION TO COMPEL ARBITRATION (C
07 4340 CW)

**TABLE OF AUTHORITIES**
(continued)

Page

**Statutes**

12 U.S.C.
  § 1432 .................................................................................................................1, 5
  § 1432 (a) ...........................................................................................................6

42 U.S.C.
  § 2000e-3(a) .......................................................................................................10

9 U.S.C.
  § 2 ......................................................................................................................12
  § 3 .................................................................................................................18, 19
  § 4 ......................................................................................................................18

Cal. Code Civ. Proc.
  § 1281 ................................................................................................................12

Cal. Gov't Code
  § 12940, *et seq* .................................................................................................10

Federal Home Loan Bank Act of July 22, 1932, Ch. 522, 47 Stat. 725, codified at 12 U.S.C.
  § 1421 *et. seq* ...................................................................................................5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEFENDANTS' MOTION TO DISMISS;
PETITION TO COMPEL ARBITRATION (C
07 4340 CW)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Freddie Lambright, Jr.'s ("Plaintiff") Complaint alleges discrimination claims under two federal statutes, Title VII and 42 U.S.C. §1981 (his First and Second Causes of Action), and eight pendant state law claims (his Third through Tenth[2] Causes of Action). As discussed in detail in Section III.A below, the Federal Home Loan Bank Act, 12 U.S.C. §1432 (the "FHLB Act"), preempts Plaintiff's state law claims. Therefore, Plaintiff's Third through Tenth Causes of Action, are preempted and should be dismissed.

Plaintiff's two remaining federal claims, his First and Second Causes of Action, are subject to private, binding arbitration under the Federal Arbitration Act ("FAA"). *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122-23, 121 S.Ct. 1302, 1313 (2001). During his employment, Plaintiff repeatedly acknowledged, signed and agreed to be bound by FHLB-SF's Dispute Resolution Procedure, which requires Plaintiff to submit all claims "arising out of his employment," including his claims against the Bank, Adams and Ungson, to binding arbitration. The Dispute Resolution Procedure, and specifically the arbitration provision therein, not only comply with the FAA but fully comply with the California Supreme Court's holding in *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 91 (2000) and are enforceable by this Court. Pursuant to *Circuit City* and *Armendariz*, Defendants' petition to compel arbitration should be granted and this action should be stayed pending arbitration.

### II.    STATEMENT OF FACTS

#### A.    Plaintiff's Employment with the Bank.

Plaintiff Freddie Lambright, Jr. ("Plaintiff") commenced employment with the Bank on or about September 1, 1995. Complaint ¶11. Plaintiff was employed as a Senior Community Investment Consultant. Complaint ¶4. Plaintiff reported directly to Ungson, Assistant Vice President of Community Investment. Complaint ¶ 7, 24. Ungson reported to Adams, Vice President and Director of Affordable Housing. Complaint ¶ 6. Plaintiff's employment was

---

[2] Plaintiff's tenth claim for "hostile work environment" claim (Complaint ¶¶94-96) is erroneously captioned as his "Eighth" Cause of Action.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7603436.4                                    DEFENDANTS' MOTION TO DISMISS; PETITION TO
                                                 COMPEL ARBITRATION (C 07 4340 CW)

1    terminated for dishonesty, insubordination and failure to comply with Bank policy and procedure

2    on or about May 7, 2007.  Complaint ¶48.

3    **B.    Plaintiff's Binding Arbitration Agreement.**

4    FHLB-SF's Employee Handbook contains the following "Dispute Resolution Procedure":

5    It is the Bank's policy to resolve work-related problems and
      misunderstandings as quickly and fairly as possible.  For this
6    reason, and as detailed below, the Bank has established a dispute
      resolution procedure to resolve disputes that may arise from time to
7    time between employees and the Bank.

8    This policy:

9    • Applies to all employees and former employees, and to the
        Bank, and provides for the resolution of disputes through
10       arbitration, rather than through a jury trial.
      • Applies to all disputes arising out of the employment
11       relationship between employees or former employees and
         the Bank, including, but not limited to, (i) allegations of
12       race, color, religion, national origin, sex, sexual orientation,
         physical or mental disability, status as a Vietnam-era
13       veteran or disabled veteran, age, or any other "protected
         status" under applicable law and (ii) allegations made in
14       connection with the Bank's policy prohibiting harassment.

15   Fontenot Decl. ¶ 4, Exh.A at p. 17.

16       The Dispute Resolution Procedure sets forth detailed provisions for the submission of

17   disputes to binding arbitration (hereinafter "the Arbitration Agreement").  Fontenot Decl. ¶ 4,

18   Exh.A at pp. 17-20.  Plaintiff acknowledged and agreed to be bound by these provisions.

19   Fontenot Decl. ¶¶5-11, Exhs. B-H.

20       The relevant portions of the Arbitration Agreement provide:

21   Binding Arbitration: If any dispute is not resolved by, or submitted
      to, mediation, and you want to pursue the matter further, you must
22   submit your claim to binding arbitration (except to the extent
      binding arbitration is not permitted by law).  The Bank must also
23   submit any claims it has against employees to binding arbitration;
      however, the Bank may take other disciplinary action, up to and
24   including termination, instead of, or in addition to, filing its claim
      in arbitration.
25
26   Expenses: You will not be required to pay anything more in the
      arbitration process than you would have had to pay had you been
27   permitted to file your claims in court.  The arbitrator will determine
      the amount you would have had to pay in filing fees had you filed
      your claims in court and will assess you that amount.  Other
28   expenses of arbitration, including the arbitrator's fee and expenses,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2        DEFENDANTS' MOTION TO DISMISS; PETITION TO
                                                                                    COMPEL ARBITRATION (C 07 4340 CW)

1    will be paid by the Bank.  The cost of producing a witness will be
     paid by whoever produces the witness.  The cost of producing
2    documents or other evidence will be paid by whoever produces the
     documents or other evidence.  The cost of legal counsel for either
3    side will be paid by whoever retains the counsel.  The cost of any
     witnesses or evidence produced at the request of the arbitrator will
4    be paid by either side, within the arbitrator's discretion.

5    Discovery:  The arbitrator will have the authority to order such
     discovery, by way of depositions, interrogatories, document
6    productions, or otherwise, as the arbitrator considers necessary to a
     full and fair exploration of the issues in dispute, consistent with the
7    expedited nature of arbitration.  Generally, however, you and the
     Bank may each take no more than two depositions at your and the
8    Bank's own expense, unless you and the Bank agree to, or the
     arbitrator orders, additional depositions.  All such depositions must
9    be completed within the time period agreed to by both sides, or as
     ordered by the arbitrator, but generally no more than 30 days after
10   the selection of the arbitrator.

11   Arbitrator's Jurisdiction:  The arbitrator will have authority to
     manage the arbitration, to decide whether your claim or the Bank's
12   claim has any legal merit, and to grant any relief authorized by law
     or in equity, including punitive damages….  The arbitrator will
13   issue a written decision, including a summary of the essential
     findings and conclusions supporting the decision.

14

15   Fontenot Decl. ¶ 4, Exh.A at pp. 19-20.  In addition, the Arbitration Agreement outlines in detail

16   the methods by which the parties may select a qualified, mutually agreed-upon neutral arbitrator.

17   *Id.*

18       On May 14, 1997, Plaintiff executed an "Acknowledgement of Terms & Conditions" of

19   FHLB-SF's Employee Handbook.  Fontenot Decl. ¶ 5, Exh. B.  He acknowledged that he

20   understood that it was his responsibility to "read, understand, and follow the policies, practices

21   and procedures" in the Employee Handbook during his employment with the Bank.  *Id.*  The

22   Acknowledgement of Terms & Conditions emphasized the significant updates and additions in the

23   1997 revised Employee Handbook, including the Dispute Resolution Procedure "providing for

24   binding arbitration and quicker resolution of employee disputes." *Id.*   In January of 2003 and

25   2004, Plaintiff executed an "Annual Acknowledgement," confirming that he had reviewed and

26   agreed to comply with the provisions of the Bank's Employee Handbook.  Fontenot Decl. ¶¶ 6-7,

27   Exhs. C & D.

28       On July 14, 2004, Plaintiff executed a document entitled "Employee Handbook,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7603436.4                     3                   DEFENDANTS' MOTION TO DISMISS; PETITION TO
                                                       COMPEL ARBITRATION (C 07 4340 CW)

1  Acknowledgement of Terms & Conditions." Fontenot Decl. ¶ 8, Exh. E.  By signing the

2  document, Plaintiff again acknowledged that he had reviewed and agreed to comply with the

3  provisions of the Bank's updated Employee Handbook. *Id.*  That "Acknowledgement of Terms &

4  Conditions" pointed out changes and additions to the updated Employee Handbook, including a

5  "revised Dispute Resolution Procedure, with new mediation and payment of arbitration expense

6  procedures." *Id.*  These revised procedures provided that FHLB-SF would pay all expenses

7  unique to arbitration. *Id.*; *see also*, Fontenot Decl. ¶ 4, Exh. A.  In January 2005, March 2006,

8  and February 2007, Plaintiff again executed an "Annual Acknowledgement," all confirming that

9  he had reviewed and agreed to comply with the Bank's Employee Handbook.  Fontenot Decl. ¶¶

10  9-11, Exhs. F-H.

11  **III.    PROCEDURAL HISTORY**

12          Notwithstanding his explicit agreement to be bound by the terms of the Bank's Dispute

13  Resolution Procedure, Plaintiff filed suit against the Bank, Adams and Ungson in the United

14  States District Court for the Northern District of California on August 22, 2007, alleging race

15  discrimination in violation of 42 U.S.C. §1981 against the Bank (the First Cause of Action); race

16  discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e ("Title VII")

17  against the Bank (the Second Cause of Action); race discrimination in violation of the California

18  Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code §12940 against the Bank (the

19  Third Cause of Action); harassment based on race in violation of Cal. Govt. Code §12940 against

20  all Defendants (the Fourth Cause of Action); retaliation in violation of FEHA, Cal. Govt. Code

21  §12940 *and* 42 U.S.C. §2000, Title VII, against all Defendants (the Fifth Cause of Action);

22  wrongful termination in violation of public policy as found in the FEHA, Cal. Gov't Code

23  § 12940, against all Defendants (the Sixth Cause of Action); failure to maintain an environment

24  free from harassment in violation of FEHA, Cal. Gov't Code § 12940, against all Defendants (the

25  Seventh Cause of Action); failure to investigate employment discrimination in violation of

26  FEHA, Cal. Govt. Code §12940, against all Defendants (the Eighth Cause of Action); intentional

27  infliction of emotional distress against all Defendants (the Ninth Cause of Action); and hostile

28  work environment in violation of the FEHA, Cal. Govt. Code §12940, against all Defendants (the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Tenth Cause of Action erroneously labeled "Eighth Cause of Action").  On September 12, 2007,

2   Defendants' counsel sent a letter to Plaintiff's counsel attaching the Bank's Employee Handbook

3   and Plaintiff's Acknowledgments and requesting that Plaintiff submit his claims to private

4   binding arbitration.  Waterman Decl. ¶2, Exh. A.  Plaintiff failed to do so.  Waterman Decl. ¶3.

5   **IV.    ARGUMENT**

6          **A.    Plaintiff's State Law Claims Against the Bank, Adams and Ungson Are**
              **Barred As a Matter of Law and Should Be Dismissed Because They Are**
7             **Preempted By the Federal Home Loan Bank Act.**

8          The twelve Federal Home Loan Banks[3] are unique entities that were created by federal

9   law in 1932 for the purpose of fulfilling federal housing finance policy.  Federal Home Loan

10  Bank Act of July 22, 1932, Ch. 522, 47 Stat. 725, codified at 12 U.S.C. § 1421 *et. seq.*  The

11  Federal Home Loan Banks are special purpose federal corporations that operate under an

12  organization certificate issued pursuant to section 12 of the FHLB Act.  12 U.S.C. § 1432.

13                 1.    The Federal Home Loan Bank Act Preempts State Law.

14         The United States Supreme Court has recognized three forms of preemption – express,

15  field and conflict.  *English v. General Electric Co.,* 496 U.S. 72, 78, 110 S. Ct. 2270 (1990).

16  Express preemption exists where Congress explicitly defines the extent to which a statute or

17  regulation pre-empts state law.  *Id.*  "In the absence of explicit statutory language, state law is pre-

18  empted where it regulates conduct in a field that Congress intended the Federal Government to

19  occupy exclusively."  *Id.* at 79.  "Finally, state law is preempted to the extent that it actually

20  conflicts with federal law…where it is impossible for a private party to comply with both state

21  and federal requirements, or where the state law stands as an obstacle to the accomplishment and

22  execution of the full purposes and objectives of Congress."  *Id.*

23         In *Fahey v. O'Melveny & Myers,* 200 F. 2d 420, 446 (9th Cir. 1952), *cert. denied,* 315 U.S.

24  952 (1953), the seminal case addressing the preemptive effect of the FHLB Act, the Ninth Circuit

25  held:

26  _____

27  [3] The Federal Home Loan Bank system is comprised of the twelve banks, the Federal Housing
    Finance Board and the Office of Finance.  The twelve banks are the Federal Home Loan Banks of
28  Atlanta, Boston, Chicago, Cincinnati, Dallas, Des Moines, Indianapolis, New York, Pittsburgh,
    San Francisco, Seattle and Topeka.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  [W]e do not consider it necessary to set forth the text of the many
2  sections of Federal Home Loan Bank Act which spell out the
   completeness of the administrative and legislative controls over
3  Federal Home Loan Banks - it is sufficient to say that the regulatory
   provisions of this Act reveal an intention on the part of Congress to
4  retain the broadest kind of federal control over the number, powers
   and existence of these purely legislative creatures ... [The]
5  unambiguous language [of the FHLB Act] expresses a clear and
   definite Congressional purpose and intent to **preempt the entire**
6  **field of banking activities embraced within the terms and**
   **provisions of this banking legislation**.

7  *Id.* at 444-45 (emphasis added).  Thus, Lambright's claims which are based on state statutes that

8  attempt to regulate, define or control the Bank in fields reserved to its discretion by Congress, are

9  preempted.

10           2.      The FHLB Act Governs the Federal Home Loan Banks' Relationship with
                     Their Employees.
11

12       Through the FHLB Act, Congress specifically reserved for the twelve Federal Home Loan

13  Banks the power to set the terms and conditions of their employees' employment.  Section 12 of

14  the FHLB Act grants to each Federal Home Loan Bank:

15           the power . . . to select, employ, and fix the compensation of such
             officers, employees, attorneys and agents as shall be necessary for
16           the transaction of its business; to define their duties, require bonds
             of them and fix the penalties thereof, and to dismiss at pleasure
17           such officers, employees, attorneys, and agents.

18  12 U.S.C. § 1432 (a).  This statutory language is a broader version of the language of the Federal

19  Reserve Act of 1913, 12 U.S.C. § 341, which in turn was modeled after the National Bank Act of

20  1864, 12 U.S.C. § 24 (Fifth).[4]  The FHLB Act is different from, and much broader than, the other

21  statutes in that it applies to all bank employees not just "officers" and it contains additional

22  language allowing the FHLBs to "select, employ and fix the compensation of such officers,

23  employees, attorneys and agents as shall be necessary for the transaction of its business."

24       Courts, including this Circuit, have interpreted Section 12 to occupy the field when it

25  comes to the Federal Home Loan Banks' relations with their employees.  "Congress intended for

26

27  [4] "The National Bank Act, the Federal Reserve Act, and the Federal Home Loan Act contain the
    same "at pleasure" provision and courts tend to cite [the] interpretive authority interchangeably."
28  *Peatros v. Bank of America, et al.,* 22 Cal. 4th 147, 184 n. 3 (2000)(Brown, J., dissenting) (citing
    *Osei-Bonsu v. Federal Home Loan Bank of New York,* 726 F.Supp. 95, 97-98 (S.D.N.Y. 1989)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

I-SF/7603436.4                           6                    DEFENDANTS' MOTION TO DISMISS; PETITION TO
                                                             COMPEL ARBITRATION (C 07 4340 CW)

1    federal law to define the discretion by which the Bank may exercise in the discharge of

2    employees. <u>Any state claim</u> for wrongful termination would plainly conflict with the discretion

3    afforded the Bank by Congress." *Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214,

4    220 (4th Cir. 1993) (citing *Inglis v. Feinerman*, 701 F. 2d 97 (9th Cir. 1983), *cert. denied*, 464

5    U.S. 1040 (1984) (emphasis added)).

6        In *Inglis*, a former employee of FHLB-SF filed a claim for wrongful termination alleging

7    he was denied a disciplinary hearing in violation of FHLB-SF's then policies. The Ninth Circuit,

8    following its earlier decision in *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093

9    (1981), held that Section 12 of the FHLB Act "preempted employee claims of wrongful discharge

10   based on state law." *Inglis*, 701 F.2d at 98. The FHLB Act "permits no inroads into the "dismiss

11   at pleasure" language." *Id.* at 99.

12       Subsequently, in *Walleri v. Federal Home Loan Bank of Seattle*, 83 F. 3d 1575 (1996) the

13   Ninth Circuit dismissed the plaintiff's state law claims for wrongful termination and intentional

14   infliction of emotional distress against both the Federal Home Loan Bank of Seattle and the

15   plaintiff's managers. Citing *Inglis*, the Court held that all of plaintiff's state law claims were

16   preempted. It held that when Congress vested power in the FHLBs to "select, employ and fix the

17   compensation of ... their employees ... to define their duties ... and to dismiss [them] at pleasure

18   … [it] left no room for oversight under state law over the manner in which that power is

19   exercised." *Id.* at 1582.

20       Just as the plaintiffs' state law claims in *Inglis* and *Walleri* were preempted, Plaintiff's

21   state law claims are preempted here. Under Section 12, the Bank had the authority to terminate

22   Plaintiff's employment "at its pleasure." This Congressional authority cannot be limited or

23   circumscribed by state laws.

24              a.    Plaintiff's Common Law Intentional Infliction of Emotional
                     Distress Claim is Preempted.

25       In *Walleri*, the Ninth Circuit addressed preemption of an intentional infliction of

26   emotional distress claim against the Federal Home Loan Bank of Seattle and its managers:

27
                     [T]he conduct complained of relates solely to the employment
28                   relationship ... Attaching the label of 'intentional infliction of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  emotional distress' to these allegations does not alter the fact that
   they are all addressed to defendant's management of the
2  employment relationship with [the plaintiff]. When 12 U.S.C. 1432
   (a) vested power in the Federal Home Loan Banks to 'select,
3  employ and fix the compensation of... their employees ... to define
   their duties ...and to dismiss [them] at pleasure.... it left no room
4  for oversight under state law over the manner in which that power
   is exercised."

5  83 F. 3d at 1582 (emphasis added). The Court held that the plaintiff's claims against the Federal

6  Home Loan Bank of Seattle and her individual supervisors were preempted. *Id.* Just as in

7  *Walleri*, Plaintiff's intentional infliction of emotional distress claim against FHLB-SF, Adams,

8  and Ungson is related entirely to his employment with the Bank. Thus, it is preempted and

9  should be dismissed as against all Defendants.

10          b.      Plaintiff's California Fair Employment and Housing Act Claims are
11                  Preempted.

12          Section 12 of the FHLB Act "occupies the field" with respect to employment relationships

13  also compels the dismissal of plaintiff's claims based on California's employment discrimination

14  statutes. *See Andrews, supra.* In *Kispert v. Federal Home Loan Bank of Cincinnati*, 778 F. Supp.

15  950, 952 (S.D. Ohio 1991), the district court determined that Ohio's anti-discrimination laws

16  were preempted by the FHLB Act. In *Kispert*, the plaintiff alleged that the Federal Home Loan

17  Bank of Cincinnati fired her because of her age in violation of the federal Age Discrimination in

18  Employment Act ("ADEA") and Ohio law. The court dismissed all of the plaintiff's state law

19  claims, *including the age discrimination claim*, holding the FHLB Act preempted state law. *Id.* at

20  953 (emphasis added). Similarly, in *Osei-Bonsu v. Federal Home Loan Bank of New York*, 726

21  F.Supp. 95, 98 (S.D.N.Y. 1989), the court held that, as federal instrumentalities, the Federal

22  Home Loan Banks were immune to employment discrimination cases brought by state or local

23  agencies under state law. (Emphasis added.) *See also Ana Leon T. v. Federal Reserve Bank of*

24  *Chicago*, 823 F. 2d 928, 931 (6th Cir. 1987), *cert. denied 484 U.S.* 945 (1987) (dismissing the

25  plaintiff's claim under the Michigan fair employment statute on the basis that it was preempted by

26  the Federal Reserve Act's employment provisions); *Wiskotoni v. Mich. Nat'l Bank-West*, 716

27  F.2d 378, 387 (6th Cir. 1983) (holding the NBA "has consistently been construed by both federal

28  and state courts as preempting state law governing employment relationships between a national

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7603436.4                          8                    DEFENDANTS' MOTION TO DISMISS; PETITION TO
                                                            COMPEL ARBITRATION (C 07 4340 CW)

1   bank and its officers and depriving a national bank of the power to employ its officers other than

2   at pleasure.").

3         In *Peatros v. Bank of America, et al.*, 22 Cal. 4th 147, 178-79 (2000), the California

4   Supreme Court examined this issue at length. In *Peatros,* the plaintiff brought a claim for race

5   discrimination under the FEHA and Title VII against both Bank of America and the plaintiff's

6   district manager. The bank filed a motion for summary judgment on the ground that the National

7   Bank Act preempted the plaintiff's FEHA claims. The majority of the Court[5] held that federal

8   law governing the employment relationship between a national bank and its officers – the

9   National Bank Act, Title VII of the Civil Rights Act of 1964 and the Age Discrimination in

10  Employment Act of 1967 – <u>completely preempted the FEHA</u>. The "FEHA may nevertheless

11  "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives"

12  underlying [the NBA]." *Id.* at 171 (quoting *Hines, supra.*) "Notwithstanding the enactment of

13  federal antidiscrimination statutes, Congress has given no indication it intended to override [the

14  NBA] and subject banks to liability … in violation of state laws such as the FEHA." *Id.* at 188.

15  (Brown, J., dissenting). The court was careful to add that the National Bank Act provision on

16  employment did *not* mean that federally chartered financial institutions (such as FHLB-SF) could

17  never be liable for employment discrimination. Federally chartered banks must comply with and

18  can be held liable under *federal* statutes such as Title VII and the ADEA. *Id.* at 168 (Mosk, J.),

19  188 (Brown, J., dissenting). *See Cooper v. Fed. Reserve Bank*, 467 U.S. 867, 104 S. Ct. 2794

20  (Federal Reserve Act did not bar Title VII claims).

21        Plaintiff alleges seven causes of action under the FEHA, including race discrimination,

22  harassment based on race and retaliation.[6] Under the express holdings of *Peatros, Kispert, Osei-*

---

23  [5] The *Peatros* opinion is somewhat complicated in that the leading opinion by Justice Mosk is not
    the majority opinion. The "sole question" on review was whether "in the face of Title VII and the
24  ADEA [the NBA] preempts FEHA." 22 Cal. 4th at 156. Three justices, Mosk, Werdegar and
    Hanning found that the NBA preempted FEHA only to the extent FEHA conflicted with Title VII
25  and the ADEA. *Id.* at 174-75. Four justices, Brown, George, Kennard and Huffman found that
    the NBA *completely* preempted the FEHA. However, Justice Kennard, in her concurring opinion,
26  found that under the particular facts of the case, the plaintiff's claims were not subject to the
    NBA. She stated: "I would agree with Justice Brown [and George and Huffman] that the act <u>fully</u>
27  <u>preempts a state law FEHA cause of action.</u>" *Id.* at 183, n.1 (emphasis added).
    [6] The caption of Plaintiff's Fifth Cause of Action alleges that he was retaliated against by the
28  Bank, Adams and Ungson in violation of the FEHA *and* Title VII. This appears to be a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7603436.4                              9                    DEFENDANTS' MOTION TO DISMISS; PETITION TO
                                                                COMPEL ARBITRATION (C 07 4340 CW)

1    *Bonsu* and *Ana Leon T.*, those claims are preempted by the FHLB Act and should be dismissed.

2        Plaintiff may argue that preemption of his FEHA claims should be analyzed under

3    "conflict" as opposed to "field" preemption.  The distinction between "field" and "conflict"

4    preemption is often blurry however and regardless of which preemption analysis courts use, the

5    result is usually the same. *See e.g. English*, 496 U.S. at 78.  In *Kroske v. US Bank Corp.*, 432

6    F.3d 976, 987 (9th Cir. 2006) the Ninth Circuit held that the Congress repealed the NBA to the

7    extent necessary to give effect to the ADEA.  The Court held insofar as the Washington State law

8    at issue "mirrored" the ADEA, the Washington law was not preempted.  This echoes the

9    reasoning of the lead opinion in *Peatros* case which found that the state law was preempted only

10   to the extent that it (1) purported to create a protected class that was not also a protected class

11   pursuant to Title VII or the Age Discrimination in Employment Act; and (2) created a remedy

12   that was not available for a person in a class protected by federal law.

13       Even assuming that a "conflict preemption" analysis is appropriate here, Plaintiff's FEHA

14   claims are preempted.  Unlike the Washington State statute at issue in *Kroske*, the FEHA does not

15   "mirror" Title VII.  The FEHA creates additional protections and remedies beyond those

16   contemplated by the federal statutes.  The FEHA has a longer statute of limitations; it protects a

17   much broader class of persons that Title VII; and it allows for punitive damages and unlimited

18   compensatory damages remedies. *See* Cal. Gov't Code § 12940, *et seq.*  Given that the FEHA

19   imposes much greater limitations on the Bank than Title VII and the FHLB-Act, it conflicts with

20   those laws and is thus preempted.

21           3.    The FHLB Act Preempts Not Only Claims Against the Bank, but Claims
                   Against Bank Employees

22       In cases addressing liability of individual bank managers and agents, both the Ninth

23   Circuit and the California Supreme Court found that claims against individual manager and

24   supervisors were preempted by the FHLB (or similar) Act. *See Walleri.*, 83 F. 3d at 1582; *Inglis*,

25

26   typographical error as nowhere in the text of his Fifth Cause of Action does Plaintiff mention
     Title VII.  Regardless, any alleged Title VII cause of action against Adams and Ungson fails
     because only the "employer," not individuals, can be held liable for discrimination and retaliation

27   under Title VII. 42 U.S.C § 2000e-3(a); *Miller v. Maxwell's Int'l*, 991 F.2d 583, 587-88 (9th Cir.
     1993) ("This circuit ... protect[s] supervising employees from liability in their individual

28   capacities.")

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7603436.4                    10              DEFENDANTS' MOTION TO DISMISS; PETITION TO
                                                 COMPEL ARBITRATION (C 07 4340 CW)

701 F.2d at 99; *Peatros*, 22 Cal. 4th at 178-79.  In *Weiss v. Washington Mut. Bank*, 147

Cal.App.4th 72, 78 (2007), the court rejected the plaintiff's contention that his fraud claims

against the individual bank manager was not preempted by the NBA.  *Id.* (citing *Shoemaker v.*

*Myers*, 52 Cal.3d 1, 25 (1990); *Black v. Bank of America*, 30 Cal.App.4th 1, 6 (1994); *Shaw v.*

*Hughes Aircraft Co.*, 83 Cal.App.4th 1336, 1347 (2000)).  "Claims preempted as against the

employer are *necessarily preempted* against the employee who acted within the course and scope

of his employment."  As the court in *Shoemaker* noted:

> [T]he parties against whom plaintiff seeks recovery on this cause of
> action are plaintiff's supervisors: agents of the employer who are
> vested with the power to act for the employer (rightly or wrongly)
> in termination plaintiff's employment ... these defendants stand in
> the place of the employer, because the employer--the other party to
> the supposed contract--cannot act except through such agents.

*Id.* at 24-25 (emphasis added).  Accordingly, just as Plaintiff's claims against the Bank are

preempted and should be dismissed, so Plaintiff's claims against the individual defendants are

preempted and should be dismissed.

For the above reasons, all of Plaintiff's state law claims, including his Third through

Eighth and Tenth causes of action for alleged FEHA violations and his Ninth Cause of Action for

Intentional Infliction of Emotion Distress should be dismissed.  Additionally, as all state law

claims against Adams and Ungson are preempted by the FHLB Act and any Title VII claims

against them are invalid *per se*, Adams and Ungson should be dismissed from this lawsuit

entirely.

**B.     Plaintiff's Claims Should be Arbitrated.**

          1.    FHLB-SF's Arbitration Agreement is Enforceable under Both Federal and
State Law, and Encompasses Plaintiff's Claims Against All Defendants.

Plaintiff should be compelled to submit to private binding arbitration all remaining claims

against Defendants, the Bank, Adams and Ungson that are not dismissed by this Court,

specifically, his First and Second Causes of Action against the Bank.

          a.    The Arbitration Agreement Contained in the Bank's Dispute
Resolution Procedure is Enforceable Under the FAA.

"Contracts to arbitrate must be rigorously enforced."  *Perry v. Thomas*, 482 U.S. 483, 490,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7603436.4                                             11                    DEFENDANTS' MOTION TO DISMISS; PETITION TO
COMPEL ARBITRATION (C 07 4340 CW)

1   107 S.Ct. 2520, 2521 (1987).  Any party to an arbitration agreement that falls within the scope of

2   the FAA may bring a motion in federal district court to compel arbitration and stay the

3   proceedings pending resolution of the arbitration.  9 U.S.C §§ 3, 4.  Arbitration agreements in

4   employment contracts fall within the scope of the FAA.  *Circuit City Stores, Inc. v. Adams*, 532

5   U.S. 105, 123 (2001).  By its terms, the FAA "leaves no place for the exercise of discretion by a

6   district court, but instead mandates that the district court *shall* direct the parties to proceed to

7   arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*

8   *Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

9          "A written provision to settle by arbitration a controversy thereafter arising or to submit to

10   arbitration an existing controversy shall be valid, irrevocable and enforceable, save upon such

11   grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2.  Claims

12   based on statutory violations are generally arbitrable under a broadly worded arbitration clause.

13   *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 26, 111 S. Ct. 1647, 1652.  Both

14   Title VII and FEHA claims are arbitrable under the FAA.  *EEOC v. Luce, Forward, Hamilton &*

15   *Scripps*, 345 F.3d 742, 749 (9th Cir. 2003) (*en banc*) (Title VII and other discrimination claims

16   can be subject to mandatory arbitration under the FAA).

17          On a petition to compel arbitration, the only question for the Court to decide is whether

18   the parties knowingly agreed to arbitrate disputes.  *Prima Paint Corp. v. Flood & Conklin Mfg.*

19   *Co.*, 388 US 395, 403-04, 87 S.Ct. 1801, 1806 (1967).  If so, as is clearly evident here by

20   Plaintiff's signature on his seven different handbook acknowledgements, the arbitration clause is

21   enforced.  Enforceability is generally determined by examining relevant state law.  *Perry*, 482 US

22   at 492, 107 S.Ct. at 2527, fn. 9.  As explained below, California law requires submission of this

23   matter to arbitration.

24          2.      The Arbitration Agreement Contained in the Bank's Dispute Resolution
                   Procedure is Enforceable Under California Law.
25

26          Like the FAA, the California Arbitration Act states that agreements to arbitrate are "valid,

27   irrevocable, and enforceable."  Cal. Code Civ. Proc. § 1281.  California law reflects a strong

28   public policy favoring contractual arbitration as an expeditious and economical means of dispute

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

resolution. *Moncharsh v. Heily & Blase, 3* Cal. 4th 1, 9 (1992). "Arbitration is highly favored as a method of settling disputes. [citations omitted] Courts should indulge every intendment to give effect to such proceedings [citations omitted] and order arbitration unless it can be said with assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Pacific Inv. Co. v. Townsend,* 58 Cal. App. 3d 1, 9 (1976). Further, "ambiguities in an arbitration clause are to be resolved in favor of arbitration . . . ." *Chan v. Drexel Burnham Lambert, Inc.,* 178 Cal. App. 3d 632, 639 (1986).

In *Armendariz v. Foundation Health Psychare Services, Inc.,* 24 Cal. 4th 83 (2000), the California Supreme Court held that pre-dispute agreements to arbitrate statutory employment disputes are enforceable provided they meet several requirements, all of which are included in the parties' Arbitration Agreement here. *See also Little v. Auto Stiegler, Inc.,* 29 Cal. 4th 1064, 1076 (2003). The *Armendariz* requirements are set forth and analyzed below.

(1)    The Arbitration Agreement Provides for a Neutral Arbitrator.

According to *Armendariz,* a valid arbitration agreement must provide for a neutral arbitrator. *Armendariz,* 24 Cal. 4th at 103. The Supreme Court noted that a neutral arbitrator is essential to the integrity of the process. *Id.* The Arbitration Agreement is set forth in the Employee Handbook and it explicitly requires the appointment of a neutral arbitrator and outlines elaborate procedures to ensure he or she is qualified and mutually acceptable. Fontenot Decl. ¶4, Exh. A, p. 19. Thus the Arbitration Agreement satisfies the first *Armendariz* factor.

(2)    The Arbitration Agreement Does Not Limit Statutory Remedies.

The second requirement under *Armendariz* is that the arbitration agreement must not limit available statutory remedies, such as punitive damages or attorneys' fees. *Armendariz,* 24 Cal. 4th at 103. The Arbitration Agreement specifically recognizes that the arbitrator has the authority to "grant any relief authorized by law or in equity, including punitive damages." Fontenot Decl. ¶4, Exh. A, p. 20. Since the Arbitration Agreement contains no limitation on the available remedies, it satisfies the second *Armendariz* requirement.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7603436.4                    13                    DEFENDANTS' MOTION TO DISMISS; PETITION TO
COMPEL ARBITRATION (C 07 4340 CW)

(3)    The Bank's Dispute Resolution Procedures Permit More Than Adequate Discovery.

The *Armendariz* Court held that "when the parties agree to arbitrate statutory claims, they also implicitly agree, absent express language to the contrary, to such procedures as are necessary to vindicate the claim." *Armendariz*, 24 Cal. 4th at 106. While the discovery provided may be "something less than the full panoply of discovery provided in California Code of Civil Procedure § 1283.05, an enforceable agreement must permit discovery sufficient to arbitrate the parties' claims, including access to essential documents and witnesses. *Id.* Arbitrators must balance the need for adequate discovery with the goals of "simplicity, informality and expedition" of the arbitration process. *Id.*

The Arbitration Agreement more than satisfies *Armendariz's* third requirement. It recognizes the arbitrator's authority to "order such discovery, by way of depositions, interrogatories, document productions, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration. Fontenot Decl. ¶4, Exh. A, p. 20.

(4)    The Arbitration Agreement Requires a Written Arbitration Award.

The Court in *Armendariz,* also held that a valid arbitration agreement must require a written arbitration decision. *Armendariz*, 24 Cal. 4th at 107. The Arbitration Agreement meets *Armendariz's* fourth requirement because it explicitly requires the arbitrator to "issue a written decision, including a summary of the essential findings and conclusions supporting the decision." Fontenot Decl. ¶4, Exh. A, p. 20.

(5)    The Arbitration Agreement Does Not Require Plaintiff to Pay the Costs of Arbitration

The fifth and final requirement of *Armendariz* concerns the payment of fees associated with the arbitral forum. *Armendariz*, 24 Cal. 4th at 110-11. The Supreme Court held that when an employer requires that an employee submit to arbitration as a condition of employment, the arbitration agreement cannot generally require the employee to bear any type of expense that the employee would not be required to bear if she were free to bring the action in court. *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7603436.4                                                                    14                          DEFENDANTS' MOTION TO DISMISS; PETITION TO
                                                                                                             COMPEL ARBITRATION (C 07 4340 CW)

1    The Arbitration Agreement specifically provides that the employee will not be required to

2    pay anything more in the arbitration process than he would have had to pay if he had filed his

3    claims in court. Fontenot Decl. ¶4, Exh. A, p. 20.  The arbitrator will determine the amount the

4    employee would have paid in court filing fees and assesses that amount.  *Id.* All other expenses of

5    arbitration, including the arbitrator's fee and expenses, will be paid by the Bank.  Accordingly,

6    the Arbitration Agreement complies with *Armendariz's* fifth requirement.

7              (6)    The Arbitration Agreement Does Not Lack Mutuality and Is
                      Not Unconscionable.

8         "Procedural and substantive unconscionability must *both* be present in order for a court to

9    exercise its discretion to refuse to enforce a contract or clause under the doctrine of

10   unconscionability."  *Armendariz,* 24 Cal. 4th at 114 (emphasis in original).  Arbitration

11   provisions in the employment context are generally found to be procedurally unconscionable

12   because consent is required as a condition of employment.  *Id.* at 115.  However, the burden is

13   still on the employee to show *substantive unconscionability* exists.  *Id.* 114.

14        In its discussion of substantive unconscionability, the *Armendariz* Court focused on the

15   mutuality of the obligation of the parties to submit claims to arbitration.  *Armendariz,* 24 Cal. 4th

16   at 120.  In *Armendariz,* the court reasoned that a unilateral agreement that only obligated the

17   employee to arbitrate claims was so one-sided as to be substantively unconscionable.  *Id.* at 121.

18   Here, in contrast to *Armendariz,* the language of the Arbitration Agreement makes clear that it

19   requires both parties to submit their claims to arbitration.  The Dispute Resolution Procedure

20   applies to "all disputes arising out of the employment relationship between employees or former

21   employees and the Bank...." Fontenot Decl. ¶4, Exh. A, p. 17.  (emphasis added).  In addition,

22   the Arbitration Agreement explicitly requires that "the Bank must also submit any claims it has

23   against employees to binding arbitration." Fontenot Decl. ¶4, Exh. A, p. 17.  Because the

24   Arbitration Agreement is entirely mutual and consequently not unconscionable, it should be

25   enforced.

26              (7)    If Any Portion of the Agreement Were Found to Violate
                      *Armendariz* It Should Be Severed.

27        In *Armendariz,* the Court was faced with a unilateral arbitration agreement which required

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7603436.4                    15                    DEFENDANTS' MOTION TO DISMISS; PETITION TO
                                                       COMPEL ARBITRATION (C 07 4340 CW)

1    the employee to arbitrate all employment-related claims, while the employer did not have to

2    arbitrate any of its claims. *Armendariz*, 24 Cal. 4th at 124-25. Therefore, the Court could not

3    sever or strike any provisions in order to make the agreement mutual. Rather, it would have had

4    to affirmatively add a provision requiring the employer to arbitrate its claims. *Id.* Under these

5    circumstances, the Court refused to enforce the agreement under the doctrine of severance

6    because:

7        there is no single provision a court can strike or restrict in order to
         remove the unconscionable taint from the agreement. Rather, the
8        court would have to, in effect, reform the contract, not through
         severance or restriction, but by augmenting it with additional terms.
9

10   *Id.*

11       Since *Armendariz*, California courts have consistently enforced mandatory arbitration

12   agreements in the employment context, even where the agreements contained provisions which

13   violated one of *Armendariz's* five procedural safeguards. Under these circumstances, these courts

14   have either severed the offending provision or interpreted it in a manner that would allow

15   enforcement of the agreement.

16       For example, in *Fittante v. Palm Springs Motors, Inc.*, the employer sought to enforce an

17   arbitration agreement which explicitly precluded appeal of the arbitrator's award. 105 Cal. App.

18   4th 708, 725-26 (2003). The employee argued that the appeal clause rendered the entire

19   agreement unenforceable. *Id.* However, the Court merely severed the appeal clause and enforced

20   the remainder of the agreement. *Id.* The Court further reasoned that, despite the agreement's

21   incorporation of the California Arbitration Act, which provides for equal payment of arbitration

22   costs, the agreement could be interpreted to require that the employer bear the costs of arbitration

23   given the absence of an explicit provision to the contrary. *Id.*

24       Severance preserves the strong public policy in favor of arbitration. Accordingly, were

25   this Court to find that any provision of the Bank's Arbitration Agreement is inconsistent with the

26   principles set forth in *Armendariz*, that portion could be severed and the parties compelled to

27   arbitrate.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7603436.4                    16                    DEFENDANTS' MOTION TO DISMISS; PETITION TO
                                                        COMPEL ARBITRATION (C 07 4340 CW)

3.    All of Plaintiff's Claims Are Subject to Arbitration.

a.    The Arbitration Agreement Covers All Claims in this Action.

The scope of matters covered by an arbitration agreement is determined by the agreement itself. *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Pacific Inv.*, 58 Cal. App. 3d at 10.  The parties' Arbitration Agreement contains a mutual agreement that Plaintiff and the Bank will arbitrate "all disputes arising out of the employment relationship."

The Bank's Dispute Resolution Procedure specifically covers:

> **[A]ll disputes arising out of the employment relationship between employees or former employees and the Bank,** including, but not limited to, (i) allegations of race, color, religion, national origin, sex, sexual orientation, physical or mental disability, status as a Vietnam-era veteran or disabled veteran, age, or any other "protected status" under applicable law and (ii) allegations made in connection with the Bank's policy prohibiting harassment.

Fontenot Decl. ¶4, Exh. A, p. 17.  (Emphasis added.)  All of Plaintiff's claims for discrimination, harassment, retaliation and intentional infliction of emotional distress arise out of his employment relationship and are specifically covered by the Arbitration Agreement.  Plaintiff should thus be compelled to arbitrate all of these claims to the extent any of them survives Defendants' Motion to Dismiss.  *See e.g., Martinez v. Scott Specialty Gases, Inc.*, 83 Cal. App. 4th 1236, 1239 & 1245 (2000) (plaintiff's wrongful termination, defamation, and misrepresentation claims fell within the arbitration agreement encompassing "every kind of type of [sic] dispute."); *24 Hour Fitness v. Superior Court*, 66 Cal. App. 4th 1199, 1205, 1209-10 (1998) (plaintiff's sexual harassment claim fell within arbitration agreement encompassing "every kind or type of dispute"); *Brookwood v. Bank of America*, 45 Cal. App. 4th 1667, 1672 & 1674 (1996) (holding agreement that stated "any dispute, controversy or claim relating to this [employment] Agreement" was sufficient to encompass plaintiff's sex discrimination claims).

b.    The Arbitration Agreement Encompasses Plaintiff's Claims Against Adams and Ungson.

Non-signatories, including individual managers and supervisors, may enforce employees' arbitration agreements.  In *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1210-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7603436.4                                    17                    DEFENDANTS' MOTION TO DISMISS; PETITION TO
COMPEL ARBITRATION (C 07 4340 CW)

1    12 (1988), the Court held:

2           While these defendants are not parties to the contract between
             [employee] and [employer], they are entitled to the benefit of the
3           arbitration agreement if, as the complaint alleges, they were acting
             as agents for [employer]. *Dryer v. Los Angeles Rams* (1985) 40
4           Cal.3d 406, 418; *Berman v. Dean Witter & Co., Inc.* (1975) 44
             Cal.App.3d 999, 1004; *accord, Harris v. Superior Court* (1986) 188
5           Cal.App.3d 475, 478 ["It is well established that a nonsignatory
             beneficiary of an arbitration clause is entitled to require
6           arbitration."].) Consistent with our analysis above, therefore, each
             employee defendant is entitled to summary judgment if, but only if,
7           [employee's] claims against him are entirely subject to the
             arbitration agreement.

8    *See also Britton v. Co-op Banking Group*, 4 F.3d 742, 748 (9th Cir. 1993) (a nonsignatory who is

9    the agent of a party to a contract containing an arbitration clause may compel the other parties to

10   the contract to arbitrate their claims against him or her for liability arising under the contract.)

11   Here, Plaintiff alleges that Adams and Ungson were the Bank's agents – Adams is and was a Vice

12   President and Ungson is and was an Assistant Vice President. Complaint ¶¶7-8. FHLB-SF's

13   Dispute Resolution Procedure applies to "all disputes arising out of the employment relationship

14   between employees or former employees and the Bank." Plaintiff's claims all arise out of his

15   employment relationship with the Bank and his supervisors; as such, to the extent they are not

16   dismissed from this lawsuit, Adams and Ungson have the ability to enforce that agreement, and

17   more importantly agree to be bound by the agreement and the arbitrator's award.

18        **C.    A Stay of Judicial Proceeding Pending Arbitration of this Action is
                  Appropriate.**

19

20        When a valid agreement to arbitrate exists between the parties and covers the matter in

21   dispute, the FAA requires the federal courts to stay any ongoing judicial proceedings and to

22   compel arbitration. *See* 9 U.S.C. §§ 3 and 4. Section 3 of the FAA provides:

23           If any suit or proceeding be brought in any of the courts of the
             United States upon any issue referable to arbitration under an
24           agreement in writing for such arbitration, the court in which such
             suit is pending, upon being satisfied that the issue involved in such
25           suit or proceeding is referable to arbitration under such an
             agreement, shall on application of one of the parties stay the trial of
26           the action until such arbitration has been had in accordance with the
             terms of the agreement, providing the applicant for the stay is not in
27           default in proceeding with such arbitration.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   9 U.S.C. § 3 (emphasis added).

2   Simultaneous litigation in federal court and in arbitration would "waste judicial resources

3   and be burdensome on the parties." *See Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d

4   857, 864 (9th Cir. 1979). Litigation on "two fronts" would be extremely wasteful and would

5   defeat the purpose of the arbitration agreement. *Id.* Because all of Plaintiff's claims are subject

6   to arbitration, this Court should stay all judicial proceedings pending arbitration.

7   **VI.    CONCLUSION**

8   For all of the foregoing reasons, Defendants respectfully request that the Court: 1) dismiss

9   Plaintiff's state law claims (the Third through Tenth Causes of Action) pursuant to Rule 12(b)(6);

10   2) dismiss individual Defendants Adams and Ungson; and 3) compel Plaintiff to arbitrate any or

11   all remaining claims alleged in his Complaint.

12   Dated: October ___10___, 2007

13   MORGAN, LEWIS & BOCKIUS LLP
    CECILY A. WATERMAN
14   SHANNON B. NAKABAYASHI

15

16   By_____
    Cecily A. Waterman
17   Shannon B. Nakabayashi
    Attorneys for Defendants
18   FEDERAL HOME LOAN BANK OF
    SAN FRANCISCO, ANITA ADAMS
19   AND EMMANUEL UNGSON

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO