WAUKEEN Q. McCOY, ESQ. (STATE BAR No: 168228)
LAW OFFICES OF WAUKEEN Q. McCOY
703 Market Street, Suite 1407
SAN FRANCISCO, CA  94103
Telephone:     (415) 675-7705
Fax:     (415) 675-2530

Attorney for FREDDIE LAMBRIGHT, JR.,
PLAINTIFF

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDDIE LAMBRIGHT, JR., <br><br> Plaintiff, <br><br> vs. <br><br> FEDERAL HOME LOAN BANK OF SAN FRANCISCO, ANITA ADAMS, EMMANUEL UNGSON and DOES 1-50, <br><br> Defendants. | Case No.  C 07 4340 CW <br><br> **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S STATE LAW CLAIMS; MOTION TO DISMISS INDIVIDUAL DEFENDANTS; PETITION TO COMPEL ARBITRATION** <br><br> Date:  November 15, 2007 <br> Time:   2:00 p.m. <br> Dept.   2 <br> Judge:  Hon. Claudia Wilken |

# I. INTRODUCTION

This case involves racial discrimination under Title VII, 42 U.S.C. §1981, the California Fair Employment and Housing Act, and a common law claim of Intentional Infliction of Emotional Distress. The majority of the allegations of the complaint arise out of the employment of Plaintiff at the Federal Home Loan Bank of San Francisco.

Defendants have brought three motions: (1) to dismiss Plaintiff's state law claims under the doctrine of federal preemption; (2) to dismiss Plaintiff's claims against individual defendants; and (3) to compel arbitration of any of Plaintiff's remaining claims. In summary, each motion should be denied because Defendants have failed to distinguish controlling authority, and have presented no fact which would merit a departure from established authority. Plaintiff's state law claims are clearly not preempted under either express, field, conflict preemption. The Intentional Infliction of Emotional Distress claims stem from racial animus, an anathema to civilized employment relationships, and the arbitration agreement is unenforceable under state law.

# II. LAW AND ARGUMENT

**A.    The Federal Home Loan Bank Act Does Not Preempt Plaintiff's State Law Claims.**

The Federal Home Loan Bank Act ("FHLBA" 42 U.S.C. §1421 et. seq.) created special purpose corporations such as Defendant Bank. Defendants correctly note that Congress in enacting the FHLBA intended to preempt certain state laws regulating *banking*. The remainder of Defendants' argument concerning preemption contains no cogent reasons for this court to depart from the clear holding set forth in Justice Mosk's plurality leading opinion in *Peatros v. Bank of America*, 22 Cal.4th 147, 91 Cal.Rptr.2d 659, 990 P.2d 539 (2000): federal bank acts do not preempt race discrimination claims under the California Fair Employment and Housing Act ("FEHA").

Defendants correctly noted that federal courts have interpreted the banking acts (The National Bank Act, the Federal Reserve Act, and the Federal Home Loan Bank Act), which all

contain the "at pleasure" language, as interchangeable for purposes of preemption. *Osei-Bonsu v. Federal Home Loan Bank of New York*, 726 F.Supp. 95, 97-98 (S.D.N.Y. 1989). Thus, although the *Peatros* decision involved the National Banking Act, its analysis and holding applies with equal force to cases involving the FHLBA, such as the present case.

In *Peatros v. Bank of America*, 22 Cal.4th 147, 91 Cal.Rptr.2d 659, 990 P.2d 539 (2000), the California Supreme Court found a conflict between the National Banking Act, as impliedly amended by Title VII and the ADEA, and California's employment discrimination statute. The court held that federal law preempted the state statute "to the extent that it conflicts, but it does not to the extent that it does not." 91 Cal.Rptr.2d 659, 990 P.2d at 553.

The *Peatros* court relied on *Dalton v. Little Rock Family Planning Services*, in which the United States Supreme Court adopted an approach to preemption characterized by restraint: "In a preemption case ... state law is displaced only 'to the extent that it actually conflicts with federal law.' The rule [is] that a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it." 516 U.S. 474, 476, 116 S.Ct. 1063, 134 L.Ed.2d 115 (1996) (per curiam) (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conservation and Dev. Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985)) (internal citations omitted). Although the leading opinion is a plurality opinion, Defendants have offered no cogent reason and no controlling authority to depart from its holding.

Defendants cite *Fahey v. O'Melveny & Myers*, 200 F.2d 420, 446 (9th Cir. 1952), *cert. den.* 315 U.S. 952 (1953) for the proposition that "Lambright's claims which are based on state statutes that attempt to regulate, define or control the Bank in fields reserved to its discretion by Congress, are preempted". Unfortunately for Defendants, aside from citing the *Fahey* decision in a bizarre and potentially misleading fashion (the quoted language is cited as 200 F.2d 420,

444-445, when the quoted language appears eight pages apart in reverse order at 200 F.2d 420, 435 and 200 F.2d 420, 443), *Fahey* involved neither employment nor race discrimination. *Fahey* involved an order from a lower court that directed the payment of 'interim attorneys' fees' to the appellees from certain funds which had been impounded in the registry of the lower court by an order made during proceedings in the main case. *Id.* at 423. The case had nothing to do with whether state law claims of discrimination are preempted by the FHLBA. *Fahey* stands for the proposition that the FHLBA preempts state laws affecting banking, nothing more.

Defendants allege that the plain language of 42 U.S.C. §1432(a) expressly preempts FEHA. A closer reading of the statute and the cases interpreting it, however, demonstrate the courts that have looked at this issue nearly uniformly hold that statutes such as FEHA are not preempted by 12 U.S.C. §1432(a).

> [I]t shall have power . . . to select, employ, and fix the compensation of such officers, employees, attorneys, and agents as shall be necessary for the transaction of its business . . .

*Id*. The gravamen of Plaintiff's complaint in this matter is not directed toward Plaintiff's selection as an employee, his rate of compensation, nor the transaction of the Defendant Bank's business. On its very face, then, 12 U.S.C. §1432(a) does not apply to claims of discrimination.

A number of federal decisions have found that state common law claims for wrongful termination have been preempted by the FHLBA. *See e.g.* . *Walleri v. Federal Home Loan Bank of Seattle*, (9th Cir. (Or.) 1996,) 83 F.3d 1575, on remand 965 F.Supp. 1459; A*ndrews v. Federal Home Loan Bank of Atlanta*, (4th Cir. (N.C.) 1993), 998 F.2d 214. However, those decisions are all based upon state law decisions and statutes governing wrongful termination, not the racial harassment and discrimination alleged here. As such, they are of no value in evaluating the present motions.

Defendants' bare claims that the Court should hold Plaintiff's FEHA claims preempted by the FHLBA flies in the face of the reasoning set forth in *Peatros, supra,* and the reasoning of *Marques v. Bank of America,* 59 Cal. App. 4th 356, 69 Cal. Rptr. 2d 154, 75 Fair Empl. Prac. Cas. (BNA) 743 (1st Dist. 1997). In *Marques* a former bank vice-president's discriminatory termination action, brought under the FEHA and other state statutes was held not preempted by the National Bank Act. In referring to the "at pleasure" provision in the banking acts, the *Marques* court held that the language was intended to give banking institutions the greatest possible latitude to hire and fire their chief operating officers in order to maintain the public trust; however, that power was diminished by Congress's determination to outlaw discriminatory terminations;

The national standard enunciated by Congress in Title VII of the Civil Rights Act of 1964 is to forbid dismissal on the basis of race, precisely the type of discrimination plaintiff has alleged here; therefore, the congressional goal of eliminating workplace discrimination is not frustrated, but is facilitated, by state antidiscrimination laws such as the FEHA.

Defendants attempt to distinguish the controlling case of *Kroske v. U.S. Bank Corp.,* 432 F.3d 976 (9th Cir. (Wash.) 2005), a case addressing the question of FHLBA preemption of Washington State's antidiscrimination statutes. With no analysis, Defendants simply aver that FEHA does not mirror Title VII. That bare allegation is insufficient to obtain dismissal of Plaintiff's claims.

**B.     The Claims Against Individual Defendants Are Not Preempted.**

Defendants only argument that the individual defendants in this matter should not be held liable under FEHA or Title VII is the same argument of federal preemption addressed above.

Plaintiff refers the Court to the analysis set forth above demonstrating that there is no Federal Preemption.

**C.    The Emotional Distress Claim is not Preempted.**

Controlling 9th Circuit case law demonstrates that Plaintiff's Intentional Infliction of Emotional Distress claim is not preempted by the FHLBA. In *Walleri v. Fed. Home Loan Bank*, 83 F.3d 1575 (9th Cir.1996) the 9th Circuit concluded that the Federal Home Loan Bank Act at-pleasure provision, 12 U.S.C. § 1432(a), preempted a state wrongful discharge claim alleging that the bank wrongfully terminated the plaintiff because she prepared a report critical of the bank's lack of compliance with the federal banking laws. *Walleri*, 83 F.3d at 1578-79, 1582, and that the Plaintiff's emotional distress claim was preempted. *Id.* Although the *Walleri* court recognized that the bank's power to dismiss "at pleasure" would not "necessarily preempt [ ] claims based on an employer's wrongful act directed at the employee outside of the employment relationship ..., the conduct complained of [in the plaintiff's emotional distress allegations] relate[d] solely to the employment relationship." *Id.* at 1582. Therefore, where Plaintiff's claims of wrongful acts relate to something other than the employment relationship, the the FHLBA does not preempt a common law tort of intentional infliction of emotional distress.

Here, the Complaint alleges racial harassment, discrimination, and retaliation with racial animus. The extreme and outrageous conduct complained of in the complaint herein is wholly unrelated to any legitimate employment activity. Therefore, Plaintiff's intentional infliction of emotional distress claim is not preempted by the FHLBA.

**D.     The Arbitration Agreement is Unenforceable.**

**1.   HLBSF's Arbitration Agreement**

The "Federal Home Loan Bank of San Francisco, Employee Handbook" contains a section entitled "Binding Arbitration". Defendant Bank compels all employees and job applicants to sign this arbitration agreement requiring arbitration of all employment-related legal claims. Accordingly, Plaintiff's employment with Defendant Bank was governed by terms and conditions found within the Handbook. Plaintiff did not freely accept the terms of the arbitration clause. Plaintiff understood that if he did not agree to the arbitration agreement he would be terminated. Plaintiff was never afforded the opportunity to negotiate the terms of the arbitration agreement and he only signed the acknowledgment of receipt in an effort to keep his job.

**2.   The Doctrine of Unconscionability**

The Federal Arbitration Act (FAA) provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. But when grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce such agreements. *Ferguson v. Countrywide Credit Indus., Inc.,* (9th Cir.2002) 298 F.3d 778, 782.

It is a settled principle of law that "arbitration is a matter of contract." *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* (1960) 363 U.S. 574. Federal law "directs courts to place arbitration agreements on equal footing with other contracts." *EEOC v. Waffle House, Inc.,* (2002) 534 U.S. 279, 293. Arbitration agreements, accordingly, are subject to all defenses to enforcement that apply to contracts generally. *See* 9 U.S.C. § 2. Because unconscionability is a generally applicable defense to contracts, California courts may refuse to enforce an unconscionable arbitration agreement. *See Ferguson, supra* 298 F.3d at 782. Unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *A & M*

*Produce Co. v. FMC Corp.,* (1982) 135 Cal.App.3d 473, 486; *see also* U.C.C. § 2-302; Cal. Civ.Code § 1670.5; Restatement (Second) of Contracts § 208 (1981). Thus, a contract to arbitrate is unenforceable under the doctrine of unconscionability when there is "both a procedural and substantive element of unconscionability." *Ferguson, supra* 298 F.3d at 783; *accord Armendariz v. Found. Health Psychcare Servs., Inc.,* (2000) 24 Cal.4th 83, 114.

    a.    **Procedural Unconscionability**

As stated above Plaintiff did not freely accept the terms of the arbitration clause. Defendant Bank, which had superior bargaining power than Plaintiff, presented the weaker party with a contract without a meaningful opportunity to negotiate, which evidences oppression and procedural unconscionability.

To determine whether the arbitration agreement is procedurally unconscionable the court must examine "the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United Healthcare Servs., Inc.,* 70 Cal.App.4th 1322, 1329, 83 Cal.Rptr.2d 348, 352-53 (1999). An inquiry into whether Defendant Bank's arbitration agreement involves oppression or surprise is central to that analysis. A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract. *Stirlen v. Supercuts, Inc.,* (1997) 51 Cal.App.4th 1519, 1532.

There is no doubt that Defendant Bank's arbitration agreement is oppressive because Defendant Bank, which possesses considerably more bargaining power than nearly all of its employees or applicants, drafted the contract and uses it as its standard arbitration agreement for all of its new employees. The agreement is a prerequisite to new employment and continued employment, and job applicants or employees are not permitted to modify the agreement's terms--they must take the contract or leave it. Because of the stark inequality of bargaining

power between Plaintiff and Defendant Bank, the Court should conclude that Defendant Bank's arbitration agreement is procedurally oppressive. *Ferguson, supra* 298 F.3d at 783-84; *Armendariz, supra* 24 Cal.4th at 114-115.

*Circuit City Stores, Inc. v. Najd,* (9th Cir.2002) 294 F.3d 1104, and *Circuit City Stores, Inc. v. Ahmed,* (9th Cir.2002) 283 F.3d 1198, should bear on the Court's analysis regarding procedural unconscionability. The arbitration agreements in those cases were not procedurally unconscionable *only* because Najd and Ahmed each had a meaningful opportunity to opt out of the arbitration program. *See Najd,* 294 F.3d at 1108; *Ahmed,* 283 F.3d at 1200. To invoke the holdings in *Ahmed* and *Najd,* Defendant Bank must show that it provided Plaintiff a meaningful opportunity to decline to enter into the arbitration agreement. Plaintiff had no meaningful opportunity to decline to enter into the arbitration agreement so as a matter of law the arbitration agreement is unconscionable.

      b.    **Substantive Unconscionability**

Substantive unconscionability centers on the "terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Kinney,* (Cal. App. 1999) 70 Cal.App.4th 1322, 1330. Several substantive terms of Defendant Bank's arbitration agreement are one-sided. The provisions concerning coverage of claims, cost-splitting, and Defendant Bank's unilateral power to modify or terminate the arbitration agreement all operate to benefit the employer inordinately at the employee's expense. Because these one-sided provisions grossly favor Defendant Bank, the court should conclude that these terms are substantively unconscionable. When evaluating the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* (1995) 514 U.S. 938, 944. Plaintiff was employed in California therefore the Court should evaluate Defendant Bank's arbitration agreement under the contract law of that state.

### *i.*     *Illusory Mutuality of Obligation to Arbitrate*

Defendant Bank's arbitration agreement, though appearing to require both parties to submit employment-related legal disputes to arbitration, the agreement specifically permits Defendant Bank to end-run the entire process by taking whatever actions it deems necessary against the employee. "The Bank must also submit any claims it has against employees to binding arbitration; however, the Bank may take other disciplinary action, up to and including termination, instead of, or in addition to its claim in arbitration." Employee Handbook, p. 19., This provision is essentially a complete opt-out provision for the Defendant Bank. As such it is repugnant.

Defendant Bank does not agree to submit to arbitration claims it might hypothetically bring against employees. Without a reasonable justification for such a glaring disparity based on "business realities," "it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee." *Armendariz, supra* 24 Cal.4th at 117; *see* Cal. Civ.Code § 1670.5(b). Therefore, this "unjustified one-sidedness deprives the [arbitration agreement] of the 'modicum of bilaterality' that the California Supreme Court requires for contracts to be enforceable under California law." Id. at 117.

It is well established under California law, that a contract to arbitrate between an employer and an employee, raises a rebuttable presumption of substantive unconscionability. Unless the employer can demonstrate that the effect of a contract to arbitrate is bilateral--as is required under California law--with respect to a particular employee, courts should presume such contracts substantively unconscionable. *See Ferguson,* 298 F.3d at 784-85; *Armendariz,* 24 Cal.4th at 115-17; *Stirlen,* 51 Cal.App.4th at 1536-39.

Defendant Bank's arbitration agreement allows Defendant Bank to essentially opt-out of the arbitration process itself, but does not provide the same benefit to employees, which alone renders it substantively unconscionable. Defendant Bank does not furnish any evidence that would indicate that the coverage of the arbitration agreement is mutual. Therefore, the Court should conclude that the coverage of the arbitration agreement is substantively unconscionable.

### ii.   *Cost-splitting*

The fee allocation scheme alone should render the arbitration agreement unenforceable. According to the arbitration agreement each party shall pay one-half of the costs of arbitration. This cost may be too much for Bank employees to bear and may cause employees not bring valid claims. This cost is something indigent plaintiffs can avoid if they brought their causes of action directly to the court. Accordingly, because this provision requires employees to pay to have their grievances resolved the arbitration clause should be deemed unconscionable.

### iii.   *Bank's Unilateral Power to Modify or Terminate the Arbitration Agreement*

According to the employee handbook, "Except for the employee's at-will status, the policies and procedures in the Employee Handbook can be changed at any time by a written amendment issued by authorized management." The adhesive nature of the contract and this provision regarding Defendant Bank's unilateral power to terminate or modify the agreement stacks the deck unconscionably in favor of Defendant Bank by allowing Defendant Bank to alter the arbitration agreement while not allowing employees to have the same right.

California law grants courts the discretion either "to sever an unconscionable provision or refuse to enforce the contract in its entirety." Cal. Civ.Code § 1670.5(a). In exercising this discretion, courts look to whether the "central purpose of the contract is tainted with illegality" or

"the illegality is collateral to [its] main purpose." *Armendariz,* 24 Cal.4th at 124.   The arbitration agreement is inundated with objectionable provisions.  While many of the terms of Defendant Bank's arbitration agreement appear facially neutral, the effect of these provisions is to obstruct its employees' ability to substantiate claims against Defendant Bank. *See Ferguson,* 298 F.3d at 787 ("While many of its arbitration provisions appear 'equally applicable to both parties, [these provisions] work to curtail the employee's ability to substantiate any claim against [the employer].' ") (quoting *Kinney,* 70 Cal.App.4th at 1332).

   The FAA articulates a strong public policy in favor of arbitration agreements. 9 U.S.C. § 2.  Nevertheless, this "policy is manifestly undermined by provisions in arbitration clauses [that] seek to make the arbitration process itself an offensive weapon in one party's arsenal." *Kinney,* 70 Cal.App.4th at 1332.

However, the adhesive nature of the contract and the provisions with respect to coverage of claims, cost-splitting, and Defendant Bank's unilateral power to terminate or modify the agreement combine to stack the deck unconscionably in favor of Defendant Bank.  Any earnest attempt to ameliorate the unconscionable aspects of Defendant Bank's arbitration agreement would require this court to assume the role of contract author rather than interpreter.  Because that would extend far beyond the province of this court the court should find the entire contract unenforceable. *See Ferguson,* 298 F.3d at 787-88; *Armendariz,* 24 Cal.4th at 124-27.

### III.  CONCLUSION

As the foregoing demonstrates, the three motions of Defendants should be denied.  Plaintiff's state law claims are not preempted by the FHLBA, as the California Fair Employment and Housing Act mirrors the provisions of Title VII.  Plaintiff's common-law claims are not preempted because the complaint alleges acts falling outside the employment relationship.  Plaintiff's claims against the individual defendants are not preempted, and the Arbitration

1  Agreement is unenforceable as a condition of employment.  Plaintiff requests that all three
2  motions be denied.

6  Dated:  October 24, 2007           LAW OFFICES OF WAUKEEN Q. McCOY

8                     _____/S/Waukeen McCoy_____
                      WAUKEEN Q. McCOY, ESQ.