IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDDIE LAMBRIGHT, JR.,<br><br>    Plaintiff,<br><br>  v.<br><br>FEDERAL HOME LOAN BANK OF SAN FRANCISCO, ANITA ADAMS, EMMANUEL UNGSON and DOES 1-50,<br><br>    Defendants.<br>_____/ | No. C 07 4340 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' PETITION TO COMPEL ARBITRATION |

    Defendants Federal Home Loan Bank of San Francisco (FHLBSF), Anita Adams and Emmanuel Ungson move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Freddie Lambright, Jr.'s state law claims and to dismiss all claims against the individual Defendants.  Defendants further petition the Court to compel arbitration of Plaintiff's remaining claims.  Plaintiff Freddie Lambright, Jr. opposes the motion and petition.  Having considered all the papers filed by the parties, the Court GRANTS Defendants' motion in part and DENIES it in part and GRANTS Defendants' petition.

BACKGROUND

Plaintiff, an African American, worked as a Senior Community Investment Consultant at FHLBSF from September 1, 1995 to May 7, 2007. Defendant Adams was Defendant FHLBSF's Vice President and Director of Community Investment; Defendant Ungson was Assistant Vice President of Community Investment. Plaintiff alleges that Defendants harassed and discriminated against him in various ways during his twelve years as an employee at FHLBSF.

In 1996, Defendant Adams told Plaintiff that she did not want him to talk with a fellow African-American employee all day. Defendant Adams also required Plaintiff and the aforementioned employee to attend writing classes because they did not write to her satisfaction. Deeming such actions to constitute harassment and a hostile work environment, Plaintiff complained to human resources (HR) and got approval for counseling of Defendant Adams and himself. After counseling, Defendant Adams returned to abusing and harassing Plaintiff verbally. During a staff meeting, Defendant Adams humiliated Plaintiff to the point that she was told that she owed him an apology. When Plaintiff suggested that they return to counseling, Defendant Adams said human resources could resolve the problem. Plaintiff again went to human resources, which agreed to help him. An HR representative met with Plaintiff and Defendant Adams to no avail, and Plaintiff resorted to avoiding Defendant Adams. FHLBSF placed an additional layer of management between Plaintiff and Defendant Adams as a buffer.

Plaintiff alleges that Defendant Ungson facilitated Defendant Adams' abuse and harassment of Plaintiff. In October, 2006,

2

Defendant Ungson told Plaintiff of complaints that Plaintiff was never at his desk and not performing his duties. Plaintiff asked to confront his accusers but was refused. Scrutiny of Plaintiff made him so uncomfortable as to seek assistance from FHLBSF's Employee Assistance Program (EAP). EAP advised him to contact HR, which told him not to be concerned with what others had said about him and to discuss with Defendant Ungson his expectations of Plaintiff. Plaintiff told Defendant Ungson that he was performing his work, as demonstrated by his caseload activity. But in January, 2007, Defendant Ungson again received a complaint about Plaintiff not performing his duties, and Plaintiff again was given no opportunity to contest it. That same month, Plaintiff again contacted EAP, which offered him the opportunity to speak with a psychiatrist and advised him to speak with HR. Plaintiff spoke with a Senior Vice President (SVP) of HR, who admitted that he was aware of past problems with Defendant Adams. The SVP repeated HR's earlier advice not to be concerned with complaints being made to Defendant Ungson and to speak directly to Defendant Ungson about what his expectations were.

In February, 2007, Plaintiff spoke with Defendant Ungson. Also at that time, Plaintiff's performance review showed Plaintiff exceeded or greatly exceeded expectations.

In April, 2007, Plaintiff requested and was approved for several days of vacation -- May 3, 4 and 7. Defendant Ungson assured Plaintiff that Plaintiff's caseload would be light then because FHLBSF had additional staff for its bi-annual feasibility review. Nevertheless, Plaintiff received a heavy caseload prior to

3

his vacation.

On May 1, 2007, Plaintiff asked Defendant Ungson not to count the vacation days against him because he was going to have to work full-time while on vacation. Defendant Ungson told Plaintiff that Defendant Adams had to approve this request and that he, Defendant Ungson, would speak with Defendant Adams about it when Defendant Adams returned to work the next day.

On May 2, 2007, Plaintiff came to the office to complete a pending report and collect the files he needed in order to work while on vacation. Plaintiff did not speak with or hear from Defendants Ungson or Adams as to whether Defendant Adams had approved Plaintiff's request that his vacation days not be counted as such.

On May 3, 2007, Defendant Ungson confirmed Plaintiff's scheduled vacation. On May 7, Plaintiff returned a day early from vacation to process the work he had done on vacation. On May 8, Plaintiff returned to work to find he had been terminated effective May 7 for dishonesty, insubordination and failure to comply with policy and procedure. Also on May 8, Plaintiff was told that his vacation balance was negative and that he owed $1,341.75 for vacation paid but not earned.

PROCEDURAL HISTORY

On August 22, 2007, Plaintiff filed in this Court a complaint against Defendant FHLBSF for racial discrimination in violation of Title 42 U.S.C. § 1981; racial discrimination in violation of Title 42 U.S.C. §§ 2000 et seq. (Title VII); racial discrimination in violation of Cal. Gov. Code § 12940 (Fair Employment and Housing

4

Act (FEHA)); harassment in violation of the FEHA; retaliation in violation of Title VII and the FEHA; wrongful termination in violation of public policy in violation of the FEHA; failure to maintain an environment free from harassment in violation of the FEHA; failure to investigate in violation of the FEHA; hostile work environment in violation of the FEHA and intentional infliction of emotional distress. In all but the § 1981, Title VII and FEHA racial discrimination charges, Plaintiff sues the individual Defendants in addition to Defendant FHLBSF.

## DISCUSSION

I. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

A. Legal Standard

All material allegations in a complaint will be taken as true and construed in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required." Fed. R. Civ. P. 8(e). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1964 (2007).

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile.

5

<u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. <u>Id.</u> at 296-97.

  B. Preemption by the Federal Home Loan Bank Act

  Defendants move to dismiss on the grounds that all of Plaintiff's state law claims are preempted by the Federal Home Loan Bank Act (FHLBA), 12 U.S.C. §§ 1421 <u>et seq.</u> Under the United States Constitution's Supremacy Clause, state law that conflicts with federal law has no effect. <u>Cipollone v. Liggett Group, Inc.</u>, 505 U.S. 504, 516 (1992) (citing U.S. Const. art. VI, cl. 2). Federal preemption of state law may be express or implied. <u>Shaw v. Delta Airlines, Inc.</u>, 463 U.S. 85, 95 (1983).

> The FHLBA gives Federal Home Loan Banks (FHLBs) the power . . . to select, employ, and fix the compensation of such officers, employees, attorneys, and agents as shall be necessary for the transaction of its business,; [sic] to define their duties, require bonds of them and fix the penalties thereof, and to dismiss at pleasure such officers, employees, attorneys, and agents. . . .

12 U.S.C. § 1432(a).

  C. Intentional Infliction of Emotional Distress Claim

  In the Ninth Circuit, the at-pleasure provision of FHLBA preempts the field of the employment relationship, where an FHLB's

wrongful acts would otherwise support causes of action for an employee's claim of intentional infliction of emotional distress. Walleri v. Federal Home Loan Bank of Seattle, 83 F.3d 1575, 1582 (9th Cir. 1996).  In Walleri, the plaintiff based her intentional infliction of emotional distress claim on charges that the defendants, her supervisors at a FHLB, had discouraged and interfered with the performance of her contractual duties and subjected her to, among other things, confrontational meetings with supervisors, removal from her examiner-in-charge position, a performance rating of "unacceptable," denial of part-time work and finally termination.  Id.  The Ninth Circuit held that "attaching the label of 'intentional emotional distress' to these allegations does not alter the fact that they are all addressed to defendants' management of the employment relationship" and that the § 1432(a) at-pleasure provision "left no room for oversight under state law over the manner in which that power is exercised."  Id. Accordingly, the Ninth Circuit affirmed the district court's dismissal of Walleri's emotional distress claim.  Id.

In the instant case, Plaintiff's charge of intentional infliction of emotional distress is also based on such allegations. For example, Defendant Adams told Plaintiff that she did not want him to talk all day with a co-employee and required him to attend writing classes.  Complaints were made as to Plaintiff's work performance, he was assigned a heavy caseload instead of a promised light caseload and he was terminated for disloyalty, insubordination and failure to comply with policy and procedure. As did Walleri's, these allegations relate solely to Defendants'

7

employment relationship with Plaintiff.

Plaintiff argues that the extreme and outrageous conduct he complains of is wholly unrelated to any employment activity. It is not. That Plaintiff also claims racial discrimination, harassment and retaliation does not alter the fact that the alleged conduct underlying his emotional distress claim lies fully within the ambit of the employment relationship.

Construing Plaintiff's complaint in the light most favorable to him and accepting all his factual allegations as true, the Court concludes that Plaintiff's allegations with respect to his intentional infliction of emotional distress claim arise out of his employment relationship with FHLBSF. Therefore, the FHLBA preempts this claim. For these reasons, the claim of intentional infliction of emotional distress is DISMISSED.

D.  Claims Brought Under California's Fair Employment and Housing Act

In Walleri, the Ninth Circuit also held that Title 12 U.S.C. § 1432(a) preempts the field of employees' wrongful termination suits against FHLBs under state law. Id.; see also Inglis v. Feinerman, 701 F.2d 97, 98-99 (9th Cir. 1983) (holding that § 1432(a) preempted a wrongful discharge claim by a FHLBA employee), cert. denied, 464 U.S. 1040 (1984); Bollow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093, 1097-98 (9th Cir. 1981) (finding such a claim against a Federal Reserve Bank (FRB) preempted by the identical phrase, "to dismiss at pleasure," in the

8

Federal Reserve Act (FRA), 12 U.S.C. § 341(Fifth)).[1]

More recently, the Ninth Circuit held that, although federal anti-discrimination law conflicts with federal banks' authority "to dismiss at pleasure," the "at-pleasure" provision of the NBA is repealed by implication to the extent necessary to give effect to the later-enacted Age Discrimination in Employment Act (ADEA), even if that effect is pursued under a state law cause of action -- provided the state law mirrors the ADEA. Kroske v. U.S. Bank Corp., 432 F.3d 976, 986-87 (9th Cir. 2005), cert. denied, U.S. Bank Corp. v. Kroske, 127 S.Ct. 157 (2006).

In Kroske, the plaintiff had brought her claim of wrongful termination on the basis of age under the Washington Law Against Discrimination (WLAD), Wash. Rev. Code §§ 49.60.030-.400. Kroske, 432 F.3d at 978-79. The district court had granted a motion for summary judgment for the defendant bank, which was governed by the NBA, concluding that NBA § 24(Fifth) preempts the field of law regulating the bank's employment practices and therefore preempted Kroske's claim under the WLAD. Id. On appeal, the Ninth Circuit held that because the at-pleasure provision was repealed by

---

[1] The FHLBA, FRA and NBA confer on FHLBs, FRBs and national banks the authority to dismiss "at pleasure," and courts cite authority on these Acts interchangeably. See, e.g., Osei-Bonsu v. Federal Home Loan Bank of New York, 726 F. Supp. 95, 97-98 (S.D.N.Y. 1989) (likening FHLBs to FRBs and citing courts' interpretations of the "at pleasure" provisions in the FHLBA and FRA). Unlike the FRA, whose dismiss-at-pleasure provision encompasses "officers or employees," 12 U.S.C. § 341(Fifth), and the NBA, which grants the power as to directors, executives and officers, 12 U.S.C. § 24(Fifth), the FHBLA at-pleasure provision is broader, including "officers, employees, attorneys, and agents." 12 U.S.C. § 1432(a). For this reason, the Court need not parse whether Plaintiff was an officer or agent of the FHLBSF, because it is uncontested that he was at least an employeee.

9

implication to the extent necessary to give effect to the ADEA, the NBA did not preempt Kroske's state law claim "as limited by the ADEA." Id. Important to the court in allowing the plaintiff's WLAD claim to stand was that the WLAD's anti-age-discrimination provision "mirrors the substantive provisions of the ADEA and is interpreted consistently with the ADEA." Id. at 987.

Plaintiff argues that, by analogy, the later-enacted Title VII repeals the FHLBA to the extent necessary to give effect to Title VII and to state laws that mirror it. Defendants contend that California's FEHA does not mirror Title VII like the WLAD mirrors the ADEA. They note that the FEHA (1) has a longer statute of limitations, (2) creates additional protections and thus additional protected classes and (3) allows for remedies not available under Title VII.

However, the WLAD has a longer statute of limitations and protects more classes of people than the ADEA. But Plaintiff brings suit within Title VII's statutes of limitations, and he is a member of a racial minority protected by Title VII. Moreover, just as Washington state courts look to the ADEA to interpret the WLAD, "[t]he California courts consistently look to Title VII for guidance in interpreting FEHA." Kohler v. Inter-Tel Techs., 244 F.3d 1167, 1172 (9th Cir. 2001).

It is true that the FEHA offers greater relief than Title VII: courts may award unlimited compensatory and punitive damages under the FEHA. Murillo v. Rite Stuff Foods, Inc., 65 Cal. App. 4th 833 (1998). But as the Kroske court allowed WLAD claims against a FHLB "as limited by the ADEA," this Court can limit relief for

10

Plaintiff's FEHA claims against Defendant FHLBSF to that which is available under Title VII.

A more problematic distinction between the FEHA and Title VII is that individual employees cannot be held liable for damages under Title VII, except in their official capacities. See 42 U.S.C. §§ 2000e-16(c); Ortez v. Washington County, 88 F.3d 804, 808 (9th Cir. 1996); Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 587 (9th Cir. 1993).[2] Because Congress did not contemplate causes of action against individual defendants in Title VII, Defendants' motion to dismiss Petitioner's FEHA claims is GRANTED as to all FEHA claims against Defendants Adams and Ungson.

Both Plaintiff and Defendants cite Peatros v. Bank of America NT&SA, 22 Cal. 4th 147 (2000). However, the Court must follow the Ninth Circuit's lead in Kroske. Analogizing the reasoning in Kroske to the instant case, the Court concludes that the FEHA limits a FHLB's § 1432(a) power to dismiss at pleasure "officers, employees, attorneys, and agents" only to the extent of allowing against FHLBs claims under state law that mirrors Title VII.

Plaintiff's FEHA claims of race-based discrimination, harassment, retaliation, wrongful termination, failure to maintain an environment free from harassment, failure to investigate and hostile work environment could just as easily be Title VII claims

---

[2] Courts have allowed Title VII suits against individual defendants only in their official capacity. See Ortez, 88 F.3d at 808-09; Taylor v. ScottPolar Corp., 995 F. Supp. 1072, 1079 (D. Ariz. 1998). However, the employer alone is liable for any violation of Title VII; therefore, claims against the individuals in their official capacity merge into claims against the employer. Id.; see also Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir. 1995).

11

as FEHA claims.  Congress enacted Title VII to allow such causes of action in all workplaces, including FHLBs.  Plaintiff has brought his claims within Title VII's statute of limitations, and Plaintiff is a member of a class that Title VII protects.  Although Plaintiff may not pursue remedies Congress did not provide for Title VII claims and may not sue individual Defendants, he may pursue the FEHA claims to the extent that they mirror Title VII causes of action.

Therefore Defendants' motion to dismiss Petitioner's FEHA claims against Defendant FHLBSF is DENIED.

E.   Title VII Retaliation Claim Against Individual Defendants

As explained above, individuals are generally not proper defendants in Title VII suits.  Accordingly, the Court DISMISSES the Title VII retaliation claim against Defendants Adams and Ungson.

II.  Petition to Compel Arbitration

Defendants petition to compel arbitration of any of Plaintiff's claims that survive Defendants' motion to dismiss in accordance with FHLBSF's arbitration agreement with employees, as stated in the Employee Handbook.

According to Defendants, Plaintiff signed the Acceptance of, and Agreement to, Defendant FHLBSF's arbitration agreement and thus should be compelled to comply with his contractual obligation to arbitrate his dispute with Defendants.  Plaintiff argues that the agreement is procedurally and substantively unconscionable and therefore unenforceable.

Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et

12

seq., written agreements that controversies between parties shall be settled by arbitration are "valid, irrevocable, and enforceable, save on such grounds as exist in law or at equity for revocation of any contract." 9 U.S.C. § 2. A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the district court in which an action has been commenced for an order directing that arbitration proceed as provided for in the agreement. 9 U.S.C. § 4. If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id.

In determining whether an agreement to arbitrate is valid, federal courts must "apply ordinary state-law principles that govern the formation of contracts." Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). "General contract defenses such as fraud, duress or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." Id. (citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)); Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931 (9th Cir. 2001) (citing same). "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract. . . ." Cal. Civ. Code § 1670.5(a).

Under California law, unconscionability has both a procedural

13

and a substantive component. Although both procedural and substantive unconscionability must be present before a court will refuse to enforce a contract, they need not be present to the same degree: "the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Armendariz v. Found. Health Psychcare Servs., 24 Cal. 4th 83, 114 (2000).

> The procedural element focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms.

Ellis v. McKinnon Broad. Co., 18 Cal. App. 4th 1796, 1803 (1993) (internal citations omitted); see also Am. Software, Inc. v. Ali, 46 Cal. App. 4th 1386, 1390 (1996) ("Indicia of procedural unconscionability include oppression . . . and surprise. . . .").

A contract or clause is procedurally unconscionable if it is a contract of adhesion. Circuit City Stores v. Adams, 279 F.3d at 893 ("The [arbitration agreement] is procedurally unconscionable because it is a contract of adhesion."); see also Flores v. Transamerica Homefirst, Inc., 93 Cal. App. 4th 846, 853 (2002) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability."). A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Armendariz, 24 Cal. 4th at 113 (quoting Neal v. State Farm Ins.

14

Co., 188 Cal. App. 2d 690, 694 (1961)).

In Armendariz, the California Supreme Court found an arbitration contract to be procedurally unconscionable because "[i]t was imposed on employees as a condition of employment and there was no opportunity to negotiate." 24 Cal. 4th at 114-15. The court explained that "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." Id.

Substantive unconscionability focuses on the harshness and one-sided nature of the substantive terms of the contract. A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486-87 (1982). An adhesive agreement to arbitrate will satisfy this general standard for substantive unconscionability if the agreement lacks a "modicum of bilaterality." Armendariz, 24 Cal. 4th at 117. Whether an arbitration agreement is sufficiently bilateral is determined by an examination of the actual effects of the challenged provisions. Ellis, 18 Cal. App. 4th at 1803 ("Substantive unconscionability . . . refers to an overly harsh allocation of risks or costs which is not justified by the circumstances under which the contract was made.") (internal quotation marks omitted).

In addition, an employment agreement that requires the arbitration of unwaivable statutory claims is lawful only if it

> (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides  for  all  of  the  types  of  relief  that  would

15

> otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.

Armendariz, 24 Cal. 4th at 102 (quoting Cole v. Breuns Intern. Sec. Serv., 105 F.3d 1465, 1482 (D.C. Cir. 1997)).

Defendant suggests that an arbitration agreement passes muster under Armendariz if it meets five minimum requirements: a neutral arbitrator, no limits on statutory remedies, adequate discovery, written arbitration awards and no requirement that plaintiffs pay the costs of arbitration. This mischaracterizes Armendariz, in which the California Supreme Court, after evaluating the minimum requirements applicable to mandatory employment arbitration agreements, went on to address other more general issues that also "fall under the rubric of unconscionability." 24 Cal. 4th at 113.

A.   Procedural Unconscionability

Plaintiff alleges that he had no opportunity to negotiate the arbitration agreement in FHLBSF's Employee Handbook. He claims that FHLBSF compels all job applicants and employees to sign the arbitration agreement. Plaintiff alleges that he understood he would be fired if he did not agree to binding arbitration.

Defendant argues that the fact that a person must sign a contract as a condition of employment does not make the contract unenforceable per se. This is true, but it does not address the fact that such a contract is procedurally unconscionable. Cf. Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1108 (9th Cir. 2002) (holding arbitration agreement not procedurally unconscionable under California law where employee was offered

16

opportunity to opt out and declined).

B. Substantive Unconscionability

A contract that is procedurally unconscionable may still be enforceable if it is not also substantively unconscionable. The arbitration agreement meets the five <u>Armendariz</u> criteria described above. Plaintiff complains that splitting the cost of arbitration between FHLBSF and employees is unconscionable. However, <u>Armendariz</u> held that

> when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court. This rule will ensure that employees bringing FEHA claims will not be deterred by costs greater than the usual costs incurred during litigation, costs that are essentially imposed on an employee by the employer.

<u>Armendariz</u>, 24 Cal. 4th at 110-11. For its part, the arbitration agreement provides,

> You will not be required to pay anything more in the arbitration process than you would have had to pay in filing fees had you been permitted to file your claims in court. The arbitrator will determine the amount you would have had to pay in filing fees and will assess you that amount. Other expenses of arbitration, including the arbitrator's fees and expenses, will be paid by the Bank.

(Fontenot Decl. ¶ 4, Ex. A, 20.) This means of allocating the costs of arbitration complies with the strictures of <u>Armendariz</u> and is not unconscionable.

Calling it unconscionable unilaterality, Plaintiff objects to the Employee Handbook's provision stating, "Except for the employee's at-will status, the policies and procedures in the Employee Handbook can be changed at any time by a written amendment issued by authorized management." (Fontenot Decl. Ex. B.) This

17

provision is decidedly one-sided and advantageous to FHLBSF, perhaps to the detriment of Plaintiff and other employees. However, an evaluation of whether a contract of adhesion is unconscionable "turns not only on a one-sided result, but also on an absence of justification for it." Armendariz, 24 Cal. 4th at 117 (internal quotation marks omitted).  Here, a ready justification exists:  the business realities of the workplace dictate that employers be able to control and develop their policies and procedures.

Defendants cite 24 Hour Fitness v. Superior Court, in which the court found that an employer's discretionary power to modify the terms of its personnel handbook in writing "indisputably carries with it the duty to exercise that right fairly and in good faith." 66 Cal. App. 4th 1199, 1214 (1998).  In light of this duty, such a modification provision does not render the contract illusory. Id.  Under 24 Hour Fitness, then, Defendant FHLBSF's right to amend its employment policies in writing is not fatal to the arbitration agreement.

Plaintiff contends that Defendant FHLBSF's reservation of the right to "take other disciplinary action, up to and including termination, instead of, or in addition to its claim in arbitration," (Fontenot Decl. ¶ 4, Ex. A, 19), results in mere illusory mutuality.  But Defendants correctly point out that both employees and the FHLBSF must submit any claim against the other to arbitration.  Thus, the obligation to arbitrate is mutual.  The one-sidedness in FHLBSF's reservation of the right to discipline or even discharge employees instead of or in addition to filing its

18

claims in arbitration is justified as a legitimate "business reality:" FHLBs cannot be expected to arbitrate all discipline or discharges of at-will employees. See Armendariz, 24 Cal. 4th at 117-18 ("[U]nconscionablity turns not only on a one-sided result, but also on an absence of justification for it.") (internal quotation marks omitted).

Because Defendant FHLBSF's arbitration agreement is not substantively unconscionable, it is enforceable. Therefore, Defendants' petition to arbitrate Plaintiff's remaining claims is GRANTED.

19

CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's intentional infliction of emotional distress claim, without leave to amend. The Court further GRANTS with prejudice Defendants' motion to dismiss Plaintiff's Title VII retaliation claim against Defendants Adams and Ungson as well as the FEHA claims against them. The Court DENIES Defendants' motion to dismiss Plaintiff's FEHA claims against Defendant FHLBSF, although Plaintiff will not be entitled to FEHA remedies greater than Title VII remedies. Lastly, the Court GRANTS Defendants' petition to compel arbitration of Plaintiff's claims under Title VII, § 1981 and the FEHA against Defendant FHLBSF.

This case is stayed pending that arbitration. A case management conference will be held on November 13, 2008 at 2 p.m.

IT IS SO ORDERED.

Dated: 12/3/07

_____
CLAUDIA WILKEN
United States District Judge

20